OPINION OF THE COURT
Barbara R. Kapnick, J.
This motion was brought by order to show cause by three members of the steering committee — the AIG Entities, the Triaxx Entities and the Federal Home Loan Banks of Boston, Chicago and Indianapolis (collectively, the movants) — with the support of the State Attorneys General of New York and Delaware. The movants seek an order pursuant to CPLR 3124 compelling: (1) The Bank of New York Mellon (BNYM or petitioner or trustee) to produce communications with counsel at the June *173 28, 2011 trust committee meeting; (2) BNYM to produce communications with and documents generated by counsel concerning BNYM’s evaluation of the settlement amount, including its decision to retain RRMS Advisors and to forgo a review of loan files; (3) BNYM to produce communications with and documents generated by counsel concerning its own self-dealing;[1] and (4) BNYM to produce one or more witnesses to testify on the above topics.
The movants contend that the above categories of discovery must be compelled, despite BNYM’s assertion of the attorney-client privilege, an assertion which the movants do not dispute on this motion, pursuant to either the “at issue” waiver doctrine or the fiduciary exception to the attorney-client privilege.
“At Issue” Waiver Doctrine
The movants contend that three categories of communications with counsel and/or documents must be produced pursuant to the “at issue” waiver doctrine.
Communications at the Trust Committee Meeting
The movants argue that BNYM has placed its decision to enter into the settlement at issue in this case. To support this assertion, the movants cite the proposed final order and judgment (PFOJ), which was filed by petitioner with its verified petition, for an order, pursuant to CPLR 7701, seeking judicial instructions and approval of its proposed settlement. The movants specifically cite paragraphs g, i, j and k of the PFOJ, which contain the following proposed findings:
“g) Pursuant to the Governing Agreements and applicable law, the decision whether to enter into the Settlement Agreement on behalf of all Trust Beneficiaries, the Covered Trusts, and any Persons claiming by, through, or on behalf of any of the Trustee, the Trust Beneficiaries, or the Covered Trusts or under the Governing Agreements is a matter within the Trustee’s discretion. . . .
“i) The Trustee appropriately evaluated the terms, benefits, and consequences of the Settlement and the strengths and weaknesses of the claims being *174 settled. In that regard, the Trustee appropriately considered the claims made and positions presented by the Institutional Investors, Bank of America, and Countrywide relating to the Trust Released Claims in considering whether to enter into the Settlement Agreement.
“j) The arm’s-length negotiations that led to the Settlement Agreement and the Trustee’s deliberations appropriately focused on the strengths and weaknesses of the Trust Released Claims, the alternatives available or potentially available to pursue remedies for the benefit of the Trust Beneficiaries, and the terms of the Settlement.
“k) The Trustee acted in good faith, within its discretion, and within the bounds of reasonableness in determining that the Settlement Agreement was in the best interests of the Covered Trusts.”
Movants argue that BNYM’s decision to enter into the settlement was made by the corporate trust committee at a June 28, 2011 meeting. They cite to the deposition testimony of Robert Bailey, former in-house counsel for BNYM, who testified that “[ultimately the Corporate Trust Committee had the final vote on approving or approving entering into the settlement, yes.” (Bailey deposition at 170, lines 8-10, Dec. 3, 2012.) It is also clear that Mr. Bailey presented information and answered questions at the June 28, 2011 meeting. (Bailey deposition at 172, lines 20-25.) Richard Stanley, who chaired the trust committee meeting, testified that Mr. Bailey was his “primary source for information given the settlement negotiation in terms of information at that level of detail.” (Stanley deposition at 12, lines 14-22, Jan. 8, 2013.) The movants argue that BNYM has improperly withheld the substance of what was discussed at the meeting and refused to allow testimony on questions about the settlement agreement asked by members of the trust committee and the answers given by Mr. Bailey. The movants contend that this information is “vital to making any determination as to what the trustee considered in deciding to enter into the proposed settlement agreement, as well as the overall reasonableness of that decision.” (Mem of law in support at 7.)
Communications and Documents Relating to the Settlement Amount
Movants next argue that because BNYM has stated that the issues it considered when deciding to enter into the settlement agreement are all discussed in the expert reports that have al *175 ready been produced in this case, including a report by Brian Lin at RRMS Advisors discussing the amounts that could potentially be due as a result of breaches of representations and warranties, that BNYM’s decision to retain RRMS Advisors and its decision to agree to the settlement amount are “at issue” in this case because paragraphs 1, m and n of the PFOJ ask the court to approve the proposed settlement “in all respects.” The movants reason that BNYM cannot seek approval of the settlement “in all respects” without disclosing the communications and work product regarding its decision to hire RRMS, its finding that the RRMS report was reasonable and its conclusion that forgoing a review of underlying loan files was appropriate.
Communications and Documents Relating to the Trustee’s Legal Investigation and its Deliberations
The movants further argue that the proposed findings in paragraph j (see supra at 174), and paragraph h of the PFOJ, which states in relevant part: “h) [t]he Settlement Agreement is the result of factual and legal investigation by the Trustee,” make communications and work product regarding its legal investigation and deliberations subject to “at issue” waiver. Specifically, the movants seek communications related to issues of (1) event of default and the trustee’s decision to enter into a forbearance agreement; (2) the trustee’s assessment of its own risk and its efforts to obtain broad indemnification for its actions; (3) the trustee’s decision not to provide notice to certificateholders at any point before settlement was reached; and (4) the broad release of claims BNYM sought for itself throughout the settlement process. (Mem of law in support at 11.) The movants contend that this information is not only relevant in its own right, but will provide evidence that the trustee acted throughout the settlement negotiations in a self-interested manner. (Id.)
Opposition
Petitioner argues that it has not relied on the content of any privileged advice to prove its case and that relevance is not enough to justify a finding of waiver. Moreover, petitioner argues that the movants have had ample access to non-privileged information including the depositions of all the participants in the trust committee meeting and all five expert reports that the trustee considered. With respect to the RRMS reports, petitioner argues that the movants have had two days of depositions, the reports themselves, data and information provided by the trustee to Lin and the communications between Lin and the trustee’s counsel.
*176 Analysis
“A client can waive the attorney-client privilege by placing the subject matter of counsel’s advice in issue and by making selective disclosure of such advice.” (Matter of Stenovich v Wachtell, Lipton, Rosen & Katz, 195 Misc 2d 99, 108 [Sup Ct, NY County 2003] [citations omitted].) Waiver may also occur “where the invasion of the privilege is required to determine the validity of the client’s claim or defense and application of the privilege would deprive the adversary of vital information.” (Bolton v Weil, Gotshal & Manges LLP, 4 Misc 3d 1029[A], 2004 NY Slip Op 51118[U], *4 [Sup Ct, NY County 2004] [citations and internal quotation marks omitted].) Moreover, “[t]he waiver of the attorney-client privilege . . . normally compels the production of other documents protected by the privilege which relate to the same subject.” (Matter of Stenovich, 195 Misc 2d at 108 [citation and internal quotation marks omitted].)
“The ‘at issue’ waiver has been applied when, for example, a client asserts as a defense that he has relied on the advice of counsel. However, the waiver has been applied more broadly to cover circumstances in which a client does not expressly claim that he has relied on counsel’s advice, but where the truth of the parties’ position can only be assessed by examination of a privileged communication.” (Bolton, 4 Misc 3d 1029[A], 2004 NY Slip Op 51118[U], *4 [citations omitted and emphasis added].)
In Bolton, which is relied upon by the movants, “at issue” waiver was found where plaintiff placed his communications with counsel at issue by suing his former counsel for malpractice and therefore needing to show reliance on the legal advice and the damage that resulted from such reliance. (2004 NY Slip Op 51118[U], *6.) In Royal Indem. Co. v Salomon Smith Barney, Inc. (4 Misc 3d 1006[A], 2004 NY Slip Op 50739[U] [2004]), also relied upon by the movants, “at issue” waiver was found to apply to communications and documents relating to whether defendants provided timely notice to plaintiffs, which was a condition precedent to coverage under the underlying insurance policies. The court reasoned that “[defendants cannot establish that they provided timely notice to [plaintiff] while at the same time refusing to disclose the information that would either prove or disprove that threshold assertion.” (2004 NY Slip Op 50739CU], *9-10.)
*177 However, in Deutsche Bank Trust Co. of Ams. v Tri-Links Inv. Trust (43 AD3d 56, 64 [1st Dept 2007]), the Appellate Division, First Department stated the following:
“Of course, that a privileged communication contains information relevant to issues the parties are litigating does not, without more, place the contents of the privileged communication itself ‘at issue’ in the lawsuit; if that were the case, a privilege would have little effect. Rather, ‘at issue’ waiver occurs ‘when the party has asserted a claim or defense that he intends to prove by use of the privileged materials.’ An example of an affirmative act that does constitute ‘at issue’ waiver of privilege is a party’s ‘assert[ing] as an affirmative defense [its] reliance upon the advice of counsel.’ ‘Moreover, selective disclosure is not permitted as a party may not rely on the protection of the privilege regarding damaging communications while disclosing other self-serving communications.’ ” (Citations omitted.)
In Deutsche Bank, the reasonableness of the amount spent to defend and ultimately settle an action were at issue. The Court reasoned that
“[t]he need to determine the reasonableness of the amounts Bankers Trust spent to defend and settle the [underlying] action does not . . . place at issue the legal advice Bankers Trust received from its attorneys in that litigation, those attorneys’ work product, or their private mental impressions, conclusions, opinions or legal theories.” (Id. at 65.)
Moreover, the Court in Deutsche Bank also addressed the issue of whether the defendant was entitled to privileged information to probe whether the underlying settlement was reached “in good faith,” which was undisputedly an issue in the case. The Court held that “[t]he good faith requirement does not. . . give [defendant] warrant to invade [plaintiffs] attorney-client privilege.” (Id. at 67.)
This proceeding is unlike the situation in a legal malpractice case where the issues simply cannot be determined without the disclosure of legal advice and attorney work product. Here, it is clear that “at issue” waiver of the attorney-client privilege has not occurred because petitioner has not placed its attorneys’ legal advice or work product at issue by using such material to prove its case; nor has there been selective disclosure of legal advice or attorney work product. Additionally, it appears that
*178 there is sufficient non-privileged discovery from which the issues in this case can be determined. Thus, that portion of the movants’ motion seeking to compel discovery based on the “at issue” waiver doctrine is denied.
Fiduciary Exception
Movants next argue that in the event the court does not find “at issue” waiver, then they are entitled to the communications discussed above pursuant to the fiduciary exception to the attorney-client privilege.
This court has already ruled on the record on August 2, 2012 that the fiduciary exception may apply in this case even though BNYM is an indenture trustee and not an ordinary trustee. (Tr at 159, line 16-160, line 11, Aug. 2, 2012, citing AMBAC Indent. Corp. v Bankers Trust Co., 151 Misc 2d 334, 338-341 [Sup Ct, NY County 1991]; see also United States Trust Co. of N.Y. v First Natl. City Bank, 57 AD2d 285, 295-297 [1st Dept 1977], affd 45 NY2d 869 [1978]; Hoopes v Carota, 142 AD2d 906, 910 [3d Dept 1988], affd 74 NY2d 716 [1989]; Elliott Assoc. v J. Henry Schroder Bank & Trust Co., 838 F2d 66, 71 [2d Cir 1988]; Dabney v Chase Natl. Bank of City of N.Y., 196 F2d 668, 671 [2d Cir 1952]; Ellington Credit Fund, Ltd. v Select Portfolio Servicing, Inc., 837 F Supp 2d 162, 192 [SD NY 2011].)[2] The court, however, declined to apply the exception at that time because the movants had not shown “good cause,” a prerequisite to overcoming the privilege. (See Hoopes, 142 AD2d at 910; Garner v Wolfinbarger, 430 F2d 1093, 1103-1104 [5th Cir 1970].) Movants argue that the “good cause” requirement has now been met.
In Hoopes, the Court held that good cause for disclosure was shown after the Court weighed and balanced the following factors: (1) there was an apparent identity of interests regarding *179 disclosure among the beneficiaries of the trusts; (2) plaintiffs may have been directly affected by any decision defendant made on his attorneys’ advice; (3) the information sought was highly relevant to and may be the only evidence available on whether defendant’s actions respecting the relevant transactions and proposals were in furtherance of the interests of the beneficiaries of the trust or primarily for his own interests in preserving and promoting the rewards and security of his own position as a corporate officer; (4) the communication apparently related to prospective actions by defendant, not advice on past actions; (5) plaintiffs’ claims of defendant’s self-dealing and conflict of interest are at least colorable, and the information they seek is not only relevant, but specific. (Hoopes, 142 AD2d at 910.)
The court also considered that the defendant failed to make a showing of any factors which would militate in favor of applying the privilege to the information sought; such as that he solicited advice from counsel solely in an individual capacity and at his own expense, as a defensive measure regarding potential litigation over his disputes with the trust beneficiaries. (Id. at 910-911.) To the contrary, the record in Hoopes suggested that counsel had acted on behalf of defendant both in his role as trustee and as the chief executive officer of the corporation. (Id. at 911.) Moreover, the defendant refused to divulge any information on fee arrangements that would support a finding that counsel was hired at his own expense and not the trust’s. (Id.) Accordingly, the order compelling disclosure pursuant to the fiduciary exception was affirmed.
It is critical to note that in Hoopes, the order compelled disclosure of the “content of the communications between defendant [trustee] and his attorneys regarding the transactions and proposals which [we]re the subject matter of the complaint.” (Id. at 909.) The gravamen of the complaint was that
“defendant violated his trust by self-dealing and other misconduct in which he acted with a conflict of interest, both as trustee and as chief executive officer and a director of the corporation, all of which was inimical to the interests of the trust beneficiaries. This conduct was specifically alleged to have related to defendant’s (1) proposing and obtaining board of directors’ approval of salary increases for himself and [a cotrustee], almost doubling their annual remuneration in the space of three years, (2) obtaining similar approval of long-term employment *180 contracts for various corporate officers which would protect and reward them financially in the event of the corporation’s acquisition by outside companies, and (3) handling of various alternative proposals for outright outsider acquisition of the corporation or a leveraged buyout of it participated in by present corporate management, in all of which defendant allegedly discouraged consideration of merger possibilities which would have been favorable to stockholders but less favorable to management.” (Id. at 907-908.)
Thus, in Hoopes, the disclosures directly correlated to the allegations of self-dealing and conflict of interest and the fiduciary exception was not applied to compel disclosure of communications regarding any other topics.
In the instant case, however, the movants seek communications between the trustee and its counsel on certain topics not related to the allegations of self-dealing and conflict of interest, such as: (1) communications at and surrounding the trust committee meeting and (2) communications regarding the settlement amount. This court will not compel disclosure of attorney-client communications on these topics under the fiduciary exception, but will only consider movants’ request for communications that directly correlate to the allegations of self-dealing and conflict of interest.
These communications concern (1) the event of default and the trustee’s related decision to enter into a forbearance agreement; (2) the trustee’s assessment of its own risk and its efforts to obtain broad indemnification for its actions; (3) the trustee’s decision not to provide notice to certificateholders at any point before settlement was reached; and (4) the broad release of claims BNYM sought for itself at any point before settlement was reached. (Mem of law in support at 11.)
Movants argue that they have made out a colorable claim of self-dealing and conflict of interest, sufficient to compel disclosure of privileged communications on these four issues. First, they allege that a conflict of interest arose when the trustee decided to enter into the “Forbearance Agreement,” which effectively tolled a 60-day cure period, after which, if certain noticed violations had gone uncured, an event of default would have been triggered and the trustee’s heightened duty to act as a prudent person and give notice of the event of default to all certificateholders would also have been triggered. Movants allege that the trustee agreed to “forbear” the event of *181 default and effectively avoid triggering its heightened duty while it engaged in settlement negotiations, in exchange for an indemnity agreement from Bank of America. Movants also allege that the trustee proposed a term in the settlement agreement that would have released all claims that certificateholders could have brought against it. However, this term was never adopted, and was instead replaced with a term that only released claims that could have been brought against the trustee based on its conduct in entering into the settlement agreement. (Mem of law in support at 11-14.)
BNYM, on the other hand, argues that these allegations fall short of alleging a colorable claim of conflict, which according to it, must allege that the trustee benefitted at the expense of the beneficiary. BNYM urges that the settlement agreement provides no benefit to it and that the indemnification it received is nothing more than it was already entitled to under the pooling and servicing agreements (PSAs).
It is this court’s determination that the movants have alleged a colorable claim of conflict or self-dealing as to the following categories: (1) the event of default and the trustee’s related decision to enter into a forbearance agreement; (2) the trustee’s decision not to provide notice to certificateholders at any point before settlement was reached; and (3) the broad release of claims BNYM sought for itself at any point before settlement was reached.[3] Here, as in Hoopes, the movants are directly affected by any decision BNYM made on its attorney’s advice and the communications with counsel apparently relate to prospective actions by the trustee, not advice on past actions. The communications sought may be the only evidence available on these issues, which are certainly relevant in light of the proposed findings sought by the petitioners in the PFOJ. BNYM also has not raised any reasons for not finding good cause except to substantively argue that it was not conflicted, which is not the issue before the court at this time. The court need only find *182 a colorable claim of conflict, not determine whether the trustee was actually conflicted.
After weighing the “good cause” factors outlined in Hoopes, and the individual circumstances presented here, this court finds that good cause for disclosure of attorney-client communications concerning the three topics listed above has been shown and the motion is granted accordingly. However, movants’ request for additional witnesses to testify on these issues is denied.

. According to the movants’ memorandum of law, this includes materials concerning issues that created risk for BNYM, including the event of default, the forbearance agreement and BNYM’s decision(s) not to provide notice to certificateholders, as well as materials concerning BNYM’s assessment of its own risk, its requests for an indemnity agreement, and BNYM’s attempts to obtain an expansive release of claims held by certificateholders.

. This court is cognizant of the fact that petitioner takes issue with this court’s finding that it owes, prior to an event of default, even a limited common-law fiduciary duty to avoid conflicts of interest. In its opposition brief to this motion, petitioner points to a recent decision from the Appellate Division, First Department which “rejected] plaintiffs’ attempt to impose fiduciary obligations upon BNY, an indenture trustee with ministerial duties.” (ASR Levensverzekering NV v Breithorn ABS Funding pic, 102 AD3d 556, 557 [1st Dept 2013], citing Racepoint Partners, LLC v JPMorgan Chase Bank, N.A., 14 NY3d 419, 425 [2010].) In ASR, however, the issue of whether an indenture trustee has a limited fiduciary duty to avoid conflicts of interest was not at issue, nor was the fiduciary exception to the attorney-client privilege. Moreover, the Court in ASR did not address or cite to any of the above listed cases, and this court does not read ASR as overturning the extensive precedent established therein.

. The court does not find that the issue raised by the movants regarding the trustee’s assessment of its own risk and its efforts to obtain broad indemnification for its actions states a colorable claim of conflict or self-dealing. It is clear from the December 10, 2010 letter from Bank of America to BNYM (exhibit F to Ingber aff, Jan. 28, 2013) that BNYM did not obtain indemnification beyond what was provided for under the PSAs. The December 10th letter states in relevant part: “[f]or the avoidance of doubt, nothing herein is intended to limit, modify, supersede, expand or in any way affect any indemnity rights already available to the trustee under each PSA for each Original Trust and Additional Trust.”